Nicholson, C. J.,
delivered the opinion of the Court.
Complainant is the administrator of W. J. Ingram, deceased, and defendants are his heirs and distribu-tees, all of the defendants being minors. He died in Gibson county, and complainant was qualified as his administrator on the 7th of March, 1859. W. J. Ingram owned land and slaves and personal property. He had been engaged in general and indiscriminate trading, and had so conducted his business as to leave his affairs in a confused and complicated condition. He was largely indebted and the debts were much scattered, many of them being small. He had but little, comparatively, due to him by notes and accounts. His *545 transactions bad been numerous, and had been kept loosely and without system.
Complainant undertook, at the request of the widow, and upon the advice of the relatives and friends of the family, so to manage the property as to be able to save the most valuable of the negroes. When six months had elapsed, after his qualification, he requested the creditors of the estate generally to hold up their claims until the end of the year, under the belief that, with the proceeds of the crops of that year, he could manage to satisfy the debts. Many of the creditors did so hold up. At the end of the year he found the amount of the debts presented had increased largely beyond his expectations. Being unable to meet them out of the proceeds of the crop, and being still anxious to save the more valuable slaves, he again requested the creditors generally to hold up, until by the sale of a portion of the slaves, and the hiring out of the others, he could raise the means to satisfy their claims. He sold four slaves and hired out the others for 1860 and 1861. The means thus raised were insufficient to pay off the debts, and he appropriated his own means to the amount of about $2,600 — as he alleges — still leaving a few claims unpaid. On a partial settlement with the County Court, on the 6th of March, 1862, it was found that he had paid out, over and above the assets that came to his hands, $1,337.78. After that time he satisfied other claims, making in all the amount of $2,600, as he alleges, which was paid out of his own means.
*546 Complainant filed bis bill in January, 1867, against the heirs of his intestate (the widow having had dower allotted), and, upon the facts already stated, seeks to have the land of .the estate sold to satisfy the creditors whose claims' remain unsatisfied, and to reimburse himself for the amount paid out of his own means.
Defendants answer by their guardian, and put complainant on the proof of all his allegations, insisting that he might have avoided the loss which occurred from the emancipation of the slaves, if he had procured them all to be sold for 'the payment of debts, and for partition; insisting on holding him to a rigid accountability, relying upon 'all the statutes of limitation, and insisting that all the land ought not to be sold.
The evidence, which is voluminous, places the fidelity and integrity of complainant beyond dispute; shows that he acted upon the advice of the defendants and others, their relatives and friends; that his conduct was marked by faithful attention to the business of the estate; that its affairs were so scattered and confused, that it was impossible to wind up the estate without delay; that in requesting the creditors to delay suits, he acted' under the erroneous but honest belief that he might save the most valuable of the slaves, and prevent a heavy accumulation of costs.
The Chancellor referred the case to the Clerk and Master for an account, who reported, in detail, setting out all the assets which came to the hands of the administrator, and after allowing all of his disbursements, he reported that all the personal estate was exhausted, *547 and that complainant had paid out of his own means, in discharging the debts of the estate, $2,155.66.
Various exceptions to the report were filed by the defendants, involving mainly the application of the different statutes of limitation to the different classes of debts paid off by complainant, and to the claim of complainant for re-imbursement.
Upon the hearing of the cause at the February Term, 1871, of the Chancery Court, the Chancellor set aside the report of the Clerk, and ordered the account to be retaken, and settled the principles on which it was to be retaken, as follows:
In accordance with an agreement filed in this cause, it was held that the claims and vouchers filed by complainant are genuine and just debts; that complainant is entitled to a credit and re-imbursement for all debts by him paid for his intestate up to and during the year 1862, and that were not barred by the general statute of limitations of six years at the time they were paid; also for any judgments against him as administrator recovered in 1862 _ and prior to that time, wherein the debts were not barred by the statute .of six years, at the time of bringing suits thereon and since paid by complainant within seven years from the death of his intestate; also, for all debts paid by him as expenses in running the farm for 1859, and for tombstone, and all debts paid for clothing, food and necessaries for the slaves, and taxes of said intestate; also, for all debts paid by him for the minor children of his intestate since his death, provided it appears for which child he paid said debts, and that they were *548 incurred for necessaries and before they had a guardian.
The Chancellor further decreed that complainant was entitled to have sold the land described in the bill, to re-imburse him for all such debts as above mentioned paid by him, after the personal assets had been exhausted in the payment of just debts, which it appears has been done.
With one modification, we adopt the ruling of the Chancellor as correct. He assumes that the act of 1715, Code, s. 1786, would bar complainant as to debts of his intestate not paid within seven years from his death.
If the act of 1715 was applicable at all to payment of debts of intestate, made by the complainant as administrator, which we do not decide, it is clear that the bar was not complete, when the statute was suspended by the schedule to the amended Constitution of 1865, and the act of 1865, c. 10. That statute of limitations was therefore suspended and did not operate uútil the 1st of January, 1867, when the bill in the case was filed.
We also modify the decree below as to allowances for necessary expenses paid for the minors before they had a guardian. We hold he should be allowed for such necessaries, without being required to show for which specific child the payments were made, and whether there was a guardian or not. If it be shown that the 'administrator furnished the minors with necessaries out of his own means, and that the minors had no means except their real estate, we are of opinion *549 that upon such facts being made clearly to appear, the administrator ought to be re-imbursed out of their interest in the real estate.
"With this modification the decree of the Chancellor is affirmed and the cause remanded. The costs will be paid by the appellants.